# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| SUSAN B. ANTHONY LIST, | : |
| *Plaintiff,* | : Case No. 1:10-cv-720 |
| | : |
| v. | : Judge Timothy Black |
| | : |
| REP. STEVE DRIEHAUS, ET AL., | : |
| *Defendants.* | : |

---

**BRIEF OF AMICUS CURAIE AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION, INC. IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER ENJOINING RC 3517.21(B) AS UNCONSTITUTIONAL**

---

**James L. Hardiman** (0031043), Legal Director
jhardiman@acluohio.org
**Carrie L. Davis** (0077041), Staff Counsel
cdavis@acluohio.org
**American Civil Liberties Union of Ohio, Inc.**
Max Wohl Civil Liberties Center
4506 Chester Avenue
Cleveland, OH 44103
Phone: 216-472-2220
Fax: 216-472-2210
*Counsel for Amicus Curiae American Civil Liberties Union Of Ohio, Inc.*

**TABLES OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………..………….2

CORPORATE DISCLOSURE STATEMENT …………………………………..……….3

INTRODUCTION …………………………………………………………….………….4

INTEREST OF AMICUS CURIAE …………………………………………..…………..4

STATEMENT OF FACTS ………………………………………………….……………5

ARGUMENT ……………………………………………………………………….…….5

    I.      R.C. 3517.21(B) IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD …..5

          A.  R.C. 3517.21(B) IS UNCONSTITUTIONALLY VAGUE ………………………7

               1.    Vagueness offenders the First Amendment, particularly in the context of political speech. ……………………………………………7

               2.    The Sixth Circuit's decision in *Petrak* does not bar a finding that R.C. 3517.21(B) is unconstitutional. ……………………………………10

          B.  R.C. 3517.21(B) IS UNCONSTITUTIONALLY OVERBROAD ………..……12

               1.    R.C.. 3517.21(B) is unconstitutionally overbroad because it invites the state to assume the role of defending a candidate's reputation against alleged libelous speech from private persons critical of the public official. ……………………………………………………..………..13

               2.  The restrictions embodied in R.C. 3517.21(B) are strikingly similar to those of the Sedition Act, which has been condemned by history as un-American and violative of the First Amendment. …………………..15

CONCLUSION …………………………………………………………………………...16

CERTIFICATE FO SERVICE ……………………………………………………………17

## TABLE OF AUTHORITIES

**CASES**

*Associated Press v. United States,* 326 U.S. 1 (1945) ...........................................15

*Buckley v. Valeo,* 424 U.S. 1 (1976) .....................................................5, 7, 8, 14, 15

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ............5

*Garrison v. Louisiana* 379 U.S. 64 (1964) ...........................................................11

*Kleiner v. First Nat. Bank of Atlanta*, 751 f.2D 1193 (11th Cir. 1985) ....................6

*Mills v. Alabama* 384 U.S. 214 (1966) ...................................................................7

*New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) .......................5, 8, 12, 14, 15

*Pestrak v. Ohio Election Commission,* 926 F.2d 573 (6th Cir. 1991).................6, 10

*Roth v. United States*, 354 U.S. 476 (1957)...........................................................15

*U.S. v. Williams,* 553 U.S. 285, 292 (2008)…………………………………....7, 12

*Whitney v. California*, 274 U.S. 357 (1927) ………………………………………6

**STATUTES, RULES AND CONSTITUTIONAL PROVISIONS**

U. S. Const., amend. I ................................................................................... passim

Ohio Revised Code 3517.21 ……………………………………………….passim

Ohio Revised Code 3517.21(B)..................................................................... passim

Ohio Revised Code 3517.21(B)(9) ..........................................................................4

Ohio Revised Code 3517.21(B)(10) ........................................................................4

Ohio Revised Code 3517.153(A)............................................................................4

Ohio Revised Code 3599.091 .........................................................................10, 11

Ohio Revised Code 3599.091(B)....................................................................10, 11

1995 S.B. 9, 1995 Ohio Laws Part 77...................................................................10

## CORPORATE DISCLOSURE STATEMENT

Pursuant to the Corporate Disclosure Statement requirement in Local Civil Rule 7.1.1, *Amicus Curiae* American Civil Liberties Union of Ohio Foundation, Inc. (ACLU of Ohio) discloses the following.

1. Is said party a parent, subsidiary or other affiliate of a publicly owned corporations?  No.

2. Is there a publicly owned corporation, not a party to the case, that has a financial interest in the outcome?  No.

 */s/ Carrie L. Davis*
**Carrie L. Davis** (0077041)
*Counsel for Amicus Curiae American Civil Liberties Union Of Ohio, Inc.*

## INTRODUCTION

RC 3517.21(B) is vague and overbroad, and it cannot withstand constitutional scrutiny. The statute fails for the same reasons that the Sedition Act has been condemned by history. The people have an absolute right to criticize their public officials, the government should not be the arbiter of true or false speech and, in any event, the best answer for bad speech is more speech. For all of these reasons, *Amicus* ACLU of Ohio urges this Court to hold RC 3517.21(B) unconstitutional and grants Plaintiff's motion for a temporary restraining order and preliminary injunction.

## INTEREST OF AMICUS CURIAE

Amicus curiae, the American Civil Liberties Union of Ohio Foundation (ACLU of Ohio) is a non-profit, non-partisan membership organization devoted to protecting basic civil rights and civil liberties for all Americans.  It is in defense of these basic liberties and for the reasons set out in the following Brief that amicus curiae ACLU of Ohio urges the Court to grant Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, restraining and enjoining the defendants Representative Steven Driehaus and all persons or entities associated with him from prosecuting his complaint pursuant to Ohio Revised Code Section 3517.153(A) before the Ohio Elections Commission.  The ACLU of Ohio urges that this Court grant Plaintiff—Susan B. Anthony List's Motion for Temporary Restraining Order and Preliminary Injunction due to the fact that Ohio Revised Code 3517.21(B)(9) and (10) are unconstitutionally vague and overbroad and have the effect of chilling the Susan B. Anthony List's right to freedom speech.

## STATEMENT OF FACTS

*Amicus* ACLU of Ohio adopts the Plaintiff's statement of facts contained in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction which, by reference, is incorporated herein.

## ARGUMENT

### I. RC 3517.21(B) IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD.

Ohio Revised Code Section 3517.21(B) is unconstitutional. The entirety of the statute criminalizes what is, in essence, core political speech. The statute prohibits a wide variety of speech, in an equally wide variety of contexts and media. The only criteria to fall within the prohibition: that someone allege the speech is "false." It is not the government's place to pass judgment on what political speech is acceptable, and certainly not in the context of criticizing a public official.

Political speech cannot be so flagrantly encumbered. The protections of the First Amendment are at their strongest with respect to political speech. See, *Buckley v. Valeo*, 424 U.S. 1 (1976), *New York Times v. Sullivan*, 376 U.S. 254 (1964). Furthermore, the First Amendment protects unpopular speech from the censorship of those in power. A citizen's right to speak on matters of public concern "'is more than self-expression; it is the essence of self-government.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) (citation omitted). "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values." *Id.* (citation and internal quotation marks omitted). This is so even if the speech may be offensive to listeners. "'Indeed, if it is the speaker's opinion that gives offense, that consequence is a *reason* for according it constitutional protection.'" *Hustler*, 485 U.S. at 55-56 (emphasis added) (citation omitted). RC 3517.21(B) wholly contradicts these principles.

5

*The statute is unconstitutionally vague*. "False" statements are not always objectively self-evident. With most speech, in particular political speech, truth or falsity is subjective. Educated minds may disagree. The First Amendment exists to protect citizens' right to hold and to communicate such different beliefs, free from the government picking and choosing which viewpoints are acceptable. See, e.g., *Whitney v. California,* 274 U.S. 357, 374, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring) ("we must bear in mind why a state is, ordinarily, denied the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence"). The government should not be in the business of passing judgment on speech. If a candidate, or even the state, is aggrieved by a statement they believe to be false, then the best answer for bad speech is more speech. *See Pestrak v. Ohio Election Commission,* 926 F.2d 573, 579 (6th Cir. 1991), quoting *Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193, 1206 n. 27 (11th Cir.1985); see also *Whitney v. California,* 274 U.S. 357, 377, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).  ("If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence.").

*The statute is unconstitutionally overbroad*. It incorporates a libel standard into what is not a libel action, but a criminal or at least quasi-criminal action. It places the state in the role of defending a political candidate's honor. This has the practical effect of acting as a prior restraint on political speech criticizing an elected official or candidate in their official, public role. Not only is this in contrast to the civil libel standard articulated in *New York Times v. Sullivan, supra*, it is far worse because here the state is charged with prosecuting private persons for speech critical of public officials.

*Amicus* ACLU of Ohio respectfully urges this Court to rule that RC 3517.21(B) is unconstitutional and grant the Susan B. Anthony List's motion for a temporary restraining order.

### A.  RC 3517.21(B) is unconstitutionally vague.

RC 3517.21(B) violates the First Amendment in that it is unconstitutionally vague. A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *U.S. v. Williams,* 553 U.S. 285, 304 (2008), citing *Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), and *Grayned v. City of Rockford,* 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

#### 1. Vagueness offends the First Amendment, particularly in the context of political speech.

In *Buckley v. Valeo*, 424 U.S. 1 (1976), the U.S. Supreme Court recognized that laws regulating speech in the context of elections:

> "operate in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'"

*Buckley*, 424 U.S. at 14, quoting *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957). The *Buckley* Court observed "that a major purpose of that Amendment was to protect the free discussion of governmental affairs. . . . of course includ(ing) discussions of candidates . . . ." Id., quoting *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966). The Court further observed that this "reflects our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-

7

open.'" Id., quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

The *Buckley* Court explained why vagueness is particularly troubling in the context of political speech.

> "In such circumstances, vague laws may not only 'trap the innocent by not providing fair warning' or foster 'arbitrary and discriminatory application' but also operate to inhibit protected expression by inducing citizens to steer far wider of the unlawful zone… than if the boundaries of the forbidden areas were clearly marked. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."

*Buckley*, 424 U.S. at 41 (internal citations omitted). Therefore, "[c]lose examination of the specificity of the statutory limitation is required where, as here, the legislation imposes criminal penalties in an area permeated by First Amendment interests."

RC 3517.21(B) is unconstitutionally vague in its prohibition of a wide variety of "false" statements about political candidates. There is a serious vagueness issue with respect to what constitutes a false statement. The statute assumes there is such a thing as "true" or "false" political speech. The ACLU asserts there is no such thing as "true" or "false" political speech when it comes to criticizing the political actions of an elected official or candidate. In the political context especially, there are many shades of grey.

There are out and out falsities, for example if SBA List had claimed that Driehaus is really a woman posing as a man for a Halloween stunt. But such blatant falsehoods are a rarity in political ads. Most political statements have at least a kernel of truth. Is a "kernel" of truth sufficient to bring the speech out from the ambit of RC 3517.21(B) even though on the whole the viewer is left with a false impression? And how much "truth" must an ad contain before it is sufficient to fall outside the statutory proscription?

8

This greyness is especially apparent in the case at bar. A number of people believe the federal health care bill permits government funding of non-thereputic abortions. Indeed the President issued an executive order to allay those fears, but some believe that executive orders are a poor substitute for legislation. Others just as strenuously believe that the opposite is true: that nothing within the federal health care law permits taxpayer funding of abortion. SBA List believes their statement to be true. Driehaus believes the statement to be false. In the marketplace of ideas, they are each entitled to their opinion, and the First Amendment gives them the right to express those opinions. Educated minds may disagree, and frequently do in the political realm.

The U.S. Supreme Court has recognized that opinions will differ as to the truth or falsity of statements, and that diversity of thought is not only protected by but vital to the First Amendment.

> "In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy."

*New York Times, supra,* 376 U.S. at 271.

"The First Amendment, said Judge Learned Hand, 'presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all.'" *New York Times v. Sullivan,* 376 U.S. 254, 270, quoting *United States v. Associated Press*, 52 F.Supp. 362, 372 (D.C.S.D.N.Y.1943).

Furthermore, even false statements must be tolerated under the First Amendment. "[E]rroneous statement is inevitable in free debate, and that it must be protected if the freedoms

9

of expression are to have the breathing space that they need to survive." *New York Times, supra,* 376 U.S. at 271-272 (internal citations omitted). The Court continued:

> "Cases which impose liability for erroneous reports of the political conduct of officials reflect the obsolete doctrine that the governed must not criticize their governors. … The interest of the public here outweighs the interest of appellant or any other individual. The protection of the public requires not merely discussion, but information. … Whatever is added to the field of libel is taken from the field of free debate."

Id. at 272. See also, Id. at 279, FN 19 ("Even a false statement may be deemed to make a valuable contribution to public debate, since it brings about 'the clearer perception and livelier impression of truth, produced by its collision with error.' Mill, On Liberty (Oxford: Blackwell, 1947), at 15; see also Milton, Areopagitica, in Prose Works (Yale, 1959), Vol. II, at 561.").

### 2. The Sixth Circuit's decision in *Petrak* does not bar a finding that RC 3517.21(B) is unconstitutional.

As the SBA List correctly points out in their memorandum, the U.S. Sixth Circuit Court of Appeals has on one occasion addressed a similar issue, in *Pestrak v. Ohio Election Commission,* 926 F.2d 573 (6th Cir. 1991). While *amicus* ACLU of Ohio agrees with the SBA List that *Pestrak* was wrongly decided, the ACLU disagrees as to the impact that decision has on the present case.

*Pestrak* involved a §1983 suit challenging the constitutionality of RC 3599.091, the predecessor statute to RC 3517.21.[1] Mr. Pestrak was a candidate for office, and a complaint was filed against him in the Ohio Elections Commission for intentionally distributing a false statement about his opponent in violation of RC 3599.091. The Elections Commission issued a probable cause finding against Petrak and turned its findings over to the county prosecutor, but no further action was taken. Petrak filed a §1983 suit in federal court challenging the constitutionality of the law. The District Court granted Petrak's motion for summary judgment

---

[1] Current RC 3517.21 is former RC 3599.091, amended and recodified by 1995 S.B. 9, 1995 Ohio Laws Part 77, eff. 8-24-95.

10

and ruled the statute unconstitutional. The Elections Commission appealed. The Sixth Circuit reversed, upholding the constitutionality of RC 3599.091. Specifically, the Court held that the portion of the statute that "punishes making a false statement either knowingly, or with reckless disregard as to its falsity… come within the Supreme Court holdings in *Garrison v. Louisiana,* 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964) and *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)." *Pestrak*, 926 F.2d at 577.

The *Petrak* Court also considered the constitutionality of the "truth-declaring" function of the Election Commission. Id. at 579. The Court concluded that "the Ohio Elections Commission does not violate the first amendment simply because it is a publicly created commission with a certain statutory mandate." Id. However, the Court grounded this result in its determination that the Election Commission's declaration of falsity was merely an instance of government speech, and that "we do not believe that the constitutionality or unconstitutionality of government-sponsored speech rests on whether that speech is believable to any particular proportion of the public." Id. The Court then concluded that if Petrak or others disagree with the Election Commission's governmental speech, "the usual cure for false speech is more speech." Id., quoting *Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193, 1206 n. 27 (11th Cir.1985).

The *Petrak* Court's decision is readily distinguishable from the instant case. As a preliminary matter, the relevant state statutes have been amended. While RC 3517.21(B) is nearly identical to its predecessor, RC 3599.091(B), 1995 Senate Bill 9 also made significant changes to the structure and authority of the Ohio Election Commission. That requires this Court to revisit *Petrak* in light of the changed nature of the Elections Commission.

*Amicus* ACLU of Ohio asserts that the First Amendment concerns implicated by RC 3517.21(B) and its prohibition on political speech that is "false" are not disposed of under the

11

*Petrak* decision. If the current statute merely allowed a government agency to opine on its view of the veracity of political speech, as the *Petrak* Court concluded, that would be far less offensive that the reality that the current law *prohibits* any speech that may be deemed false. While the ACLU tends to agree with the adage that "the usual cure for false speech is more speech," that does not help the SBA List or others similarly situated whose political speech is being wholly prohibited by the enforcement or the mere specter of RC 3517.21(B).

The Supreme Court in *New York Times v. Sullivan* observed that "[a]uthoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth - whether administered by judges, juries, or administrative officials - and especially one that puts the burden of proving truth on the speaker." *New York Times, supra,* 376 U.S. at 271.

RC 3517.21(B) errs both in defining too vaguely the evil to be combated and in prescribing a remedy which violates constitutionally guaranteed freedoms. The answer for bad speech is more speech. If candidate Driehaus disagrees with SBA List's statement, he is free to say so in whatever medium he chooses.

**B. RC 3517.21(B) is unconstitutionally overbroad.**

RC 3517.21(B) violates the First Amendment in that it is unconstitutionally overbroad. "According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *U.S. v. Williams,* 553 U.S. 285, 292 (2008).

Vagueness and overbreadth are often, although not always, complimentary. A significantly vague statute is subject to being applied to a variety of cases that involve protected speech. Such is the case here. Moreover, the vagueness opens up the issue of discretionary enforcement. That too is arguably present here. The Election Commission's Staff Counsel

12

recommended that the Election Commission not proceed, but he was overruled by the full commission. Theoretically, the Commission can proceed to block political speech by an equally divided "consensus" - the staff counsel plus a minority of the commission versus a bare majority of the commission. So again, is the speech "truthful" or not when the consensus is evenly split? Isn't that the essence of vagueness? And in this setting, if that is vagueness, then the statute must, by definition, be overbroad.

> 1. **RC 3517.21(B) is unconstitutionally overbroad because it invites the state to assume the role of defending a candidate's reputation against alleged libelous speech from private persons critical of the public official.**

RC 3517.21(B)incorporates a libel standard into what is not a libel action. RC 3517.21(B) essentially incorporates a libel standard, prohibiting someone to "[p]ost, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not." RC 3517(B)(10).

The statute essentially codifies the libel standard pertaining to public officials articulated in *New York Times v. Sullivan*, 376 U.S. 254, 279-280 (1964) ("[t]he constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'-that is, with knowledge that it was false or with reckless disregard of whether it was false or not.").

The Court's rationale for articulating that standard are equally applicable to the instant case.

> A rule compelling the critic of official conduct to guarantee the truth of all his factual assertions-and to do so on pain of libel judgments virtually unlimited in amount-leads to a comparable 'self-censorship.' Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred. Even courts accepting this defense as an adequate safeguard have recognized the difficulties of adducing legal proofs that the alleged libel was true in all its factual particulars. Under such a rule, would-be critics of official conduct may be deterred from voicing their

13

>criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which 'steer far wider of the unlawful zone.' The rule thus dampens the vigor and limits the variety of public debate. It is  inconsistent with the First and Fourteenth Amendments.

Id. at 279. The Court further noted that "[w]hat a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law of libel." Id. at 277.

RC 3517.21(B) is premised on two faulty assumptions. The statute assumes that the state has the right to protect a political candidate from being libeled, and it also assumes there is such a thing as "true" or "false" political speech. Driehaus, of course, is free to pursue a civil libel action against SBA List for the alleged personal libel against him, but it is not the state's place to censor SBA List's political speech on the mere assertion by Driehaus that the statement is "false," if a political viewpoint statement even can be false.

The U.S. Supreme Court put this question to rest long ago. "In the free society ordained by our Constitution it is not the government, but the people individually as citizens and candidates and collectively as associations and political committees who must retain control over the quantity and range of debate on public issues in a political campaign." *Buckley, supra*, 424 U.S. at 57.

The government taking on this role of libel enforcement has the practical effect of acting as a prior restraint on political speech criticizing an elected official or candidate in their official, public role. Not only is this in contrast to the civil libel standard articulated in *New York Times v. Sullivan, supra*, it is far worse because here the state is charged with prosecuting private persons for speech critical of public officials.

But this is not a libel action. What is at stake here is much bigger:  core political speech criticizing the actions of an elected official in his public duties.

14

Driehaus, or anyone else for that matter, could claim a message they dislike is false just to silence to the speaker, without having to actually prove the falsity until later. That is the essence of why prior restraint is prohibited under the First Amendment.

"[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment, which was designed "to secure 'the widest possible dissemination of information from diverse and antagonistic sources,' " and " 'to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' " *Buckley, supra,* 424 U.S. at 48-49, quoting *New York Times Co. v. Sullivan*, supra, 376 U.S. at 266, 269, 84 S.Ct., at 718, *Associated Press v. United States*, 326 U.S. 1, 20, 65 S.Ct. 1416, 1424, 89 L.Ed. 2013 (1945), and *Roth v. United States*, 354 U.S., at 484, 77 S.Ct., at 1308. In other words, government should not be in the business of deciding what political speech is acceptable.

### 2.  The restrictions embodied in RC 3517.21(B) are strikingly similar to those of the Sedition Act, which has been condemned by history as un-American and violative of the First Amendment.

The restrictions in RC 3517.21(B) resemble those in the infamous Sedition Act. The U.S. Supreme Court itself drew this parallel in observing the dangers of overbroad libel laws enforced by the government.

> "If neither factual error nor defamatory content suffices to remove the constitutional shield from criticism of official conduct, the combination of the two elements is no less inadequate. This is the lesson to be drawn from the great controversy over the Sedition Act of 1798, 1 Stat. 596, which first crystallized a national awareness of the central meaning of the First Amendment. See Levy, Legacy of Suppression (1960), at 258 et seq.; Smith, Freedom's Fetters (1956), at 426, 431 and passim. *That statute made it a crime*, punishable by a $5,000 fine and five years in prison, '*if any person shall write, print, utter or publish * * * any false, scandalous and malicious writing or writings against the government of the United States, or either house of the Congress * * *,* or the President * * *, with intent to defame * * * or to bring them, or either of them, into contempt or disrepute; or to excite against them, or either or any of them, the hatred of the good people of the United States.' The Act allowed the defendant the defense of truth, and provided that the jury were   to be judges both of the law and the facts. Despite these

15

> qualifications, the Act was vigorously condemned as unconstitutional in an attack joined in by Jefferson and Madison."

*New York Times Co. v. Sullivan*, supra, 376 U.S. at 273-274 (emphasis added).

History has condemned the Sedition Act as the epitome of an un-American law that violates the letter and spirit of the Constitution and the First Amendment.

> "Although the Sedition Act was never tested in this Court, [the Act expired by its terms in 1801], the attack upon its validity has carried the day in the court of history. Fines levied in its prosecution were repaid by Act of Congress on the ground that it was unconstitutional. See, e.g., Act of July 4, 1840, c. 45, 6 Stat. 802, accompanied by H.R.Rep.No. 86, 26th Cong., 1st Sess. (1840)… Jefferson, as President, pardoned those who had been convicted and sentenced under the Act and remitted their fines… The invalidity of the Act has also been assumed by Justices of this Court… These views reflect a broad consensus that the Act, because of the restraint it imposed upon criticism of government and public officials, was inconsistent with the First Amendment."

Id. at 276.

## CONCLUSION

For the foregoing reasons, *Amicus* ACLU of Ohio urges this honorable Court to declare RC 3517.21(B) unconstitutional and grant Plaintiff's motion for temporary restraining order and preliminary injunction.

Respectfully submitted,

*/s/ James L. Hardiman*
**James L. Hardiman** (0031043), Legal Director
jhardiman@acluohio.org
*/s/ Carrie L. Davis*
**Carrie L. Davis** (0077041), Staff Counsel
cdavis@acluohio.org
**American Civil Liberties Union of Ohio, Inc.**
Max Wohl Civil Liberties Center
4506 Chester Avenue
Cleveland, OH 44103
Phone: 216-472-2220
Fax: 216-472-2210
***Counsel for Amicus Curiae American Civil Liberties Union Of Ohio, Inc.***

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing brief of *amicus curaie* was served upon all parties by means of the Court's electronic filing system as well as by e-mail this 20th day of October, 2010.

                         */s/ Carrie L. Davis*
                         **Carrie L. Davis** (0077041)
                         *Counsel for Amicus Curiae American Civil Liberties Union Of Ohio, Inc.*