**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **SUSAN B. ANTHONY LIST,** | : | **Case No. 1:10-CV-720** |
| | : | *consolidated with Case No. 1:10-CV-754* |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **REP. STEVE DRIEHAUS,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

| | | |
|---|---|---|
| **COALITION OPPOSED TO** | : | |
| **ADDITIONAL SPENDING & TAXES,** | : | |
| | : | |
| **Plaintiff,** | : | **SECOND AMENDED COMPLAINT OF** |
| | : | **PLAINTIFF COALITION OPPOSED** |
| **v.** | : | **TO ADDITIONAL SPENDING & TAXES** |
| | : | |
| | : | |
| **OHIO ELECTIONS COMMISSION,** | : | |
| *et al.*, | : | |
| | : | |
| **and** | : | |
| | | |
| **JENNIFER BRUNNER,** | | |
| **Ohio Secretary of State,** | | |
| | | |
| **Defendants.** | | |

Now comes the Plaintiff Coalition Opposed to Additional Spending & Taxes (hereinafter referred to as "COAST"), and for its Amended Complaint alleges as follows:

### INTRODUCTION

1. This is a civil action for declaratory judgment and injunctive relief arising under the First and Fourteenth Amendments to the Constitution of the United States. It challenges the constitutionality of Section 3517.21(B)(9) and Section 3517.21(B)(10) of the Ohio Revised Code

collectively, the "Statutes"), as well as the disclaimer requirement of Section 3517.20 of the Ohio Revised Code as it relates to campaigns for federal office and the statutory mandate within Section 3599.42 of the Ohio Revised Code that any violation of Chapter 35 of the Revised Code constitutes a *prima facie* case of fraud.

2.      Section 3517.21(B) of the Ohio Revised Code prohibits any person, "during the course of a campaign for nomination or election to public office" by means of "campaign materials" to "knowingly and with intent to affect the outcome of such campaign" from:

> (9) Mak[ing] a false statement concerning the voting record of a candidate or public official;

> (10) Post[ing], publish[ing], circulat[ing], distribut[ing], or otherwise disseminat[ing] a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate.

3.      The First Amendment to the United States Constitution guarantees to all Americans the right to speak freely and state their opinion on all matters and issues, including controversial topics. Furthermore, the speech involved in this case is core political speech for which the First Amendment's protection is at its zenith.

4.      Section 3517.21(B)(9) and Section 3517.21(B) (10) of the Ohio Revised Code are unconstitutional because they regulate speech based upon its content and such regulation by the State of Ohio fails to satisfy strict scrutiny.

5.      Section 3517.21(B)(9) and Section 3517.21(B) (10) of the Ohio Revised Code are unconstitutional because they are impermissibly vague and overly broad in its regulation of speech.

6.      Section 3517.21(B)(9) of the Ohio Revised Code is unconstitutional because it lacks any requirement that actual malice be proven.

7.      To the extend they attempt to regulate conduct or speech during the course of a campaign for federal office, Section 3517.21(B)(9) and Section 3517.21(B) (10) of the Ohio Revised Code have been preempted by the Federal Elections Campaign Act of 1971 (as amended) together with the regulations and advisory opinions promulgated thereunder.

8.      Section 3517.20 mandates the inclusion of disclaimers on all political publications for or against a candidate (including candidates for federal office) that includes the name and residence or business address of the chairperson, treasurer, or secretary of the organization responsible for publishing the publication.

9.      To the extend it attempts to regulate conduct or speech during the course of a campaign for federal office, Section 3517.20 of the Ohio Revised Code has been preempted by the Federal Elections Campaign Act of 1971 (as amended) together with the regulations and advisory opinions promulgated thereunder.

10.     Furthermore, the adjudicatory processes and procedures of the Ohio Elections Commission denies those appearing before the Commission basic procedural and substantive due process right guaranteed by the Fourteenth Amendment, including, without limitation, providing adequate notice and an opportunity to be heard at probable cause hearings.

11.     Section 3599.42 of the Ohio Revised Code provides that "[a] violation of any provision of Title XXXV of the Revised Code constitutes a prima-facie case of fraud within the purview of such title."    Due to, *inter alia*, the constitutional violations existing in the adjudicatory process and procedures of the Ohio Elections Commission, as well as the absence of any requirement of actual damages be proven, the statutory declaration that any violation of any elections laws constitutes *prima facie* evidence of fraud also denies basic procedural and substantive due process right guaranteed by the Fourteenth Amendment.

12.     Those who violate any provisions of Ohio election laws may be subject to fines or criminal penalties or both.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1343(a)(4), in that it seeks to secure equitable relief under Acts of Congress, specifically 42 U.S.C. 1983 and 42 U.S.C. §2000cc, under 28 U.S.C. § 2201(a) to secure declaratory relief, under 28 U.S.C. § 2202 to secure preliminary injunctive relief, and under 42 U.S.C. § 1988 to grant Plaintiff's prayer for relief regarding costs, including reasonable attorneys fees.

14.     Venue of this action is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) because the facts giving rise to this action occurred therein.

## PARTIES

15.     Plaintiff COAST is an unincorporated association of individuals that operates and has registered with the Hamilton County Board of Elections two political action committees, COAST Candidates PAC and COAST Issues PAC.  COAST's activities are focused in southwest Ohio, including the City of Cincinnati and Hamilton County.

16.     Defendant Ohio Elections Commission (the "Commission") is an administrative body created under Chapter 3517 of the Ohio Revised Code and charged with the enforcement of various Ohio election laws, including Section 3517.21(B)(9) and Section 3517.21(B)(10) of the Ohio Revised Code.

17.     Defendants John R. Mroczkowski, Bryan Felmet, Charles E. Calvert, Jayme P. Smoot, Harvey Shapiro, Degee Wilhelm, and Larry L. Wolpert are currently serving as members of the Ohio Elections Commission (collectively, the "OEC Members"), and they, as well as any successors in office, are sued in their official capacities.

18.     In their official capacity, the OEC Members regularly receive, review, and determine cases arising under Title 35 of the Ohio Revised Code, including cases arising under the Statutes

19.     The OEC Members are authorized to render advisory opinions, issue subpoenas, compel the appearances of witnesses and the production of documents, impose civil fines, direct the removal of a candidate's name from a ballot, and refer matters to a local prosecutor for criminal prosecution in accordance with Section 3517.155(A)(1)(c) and Section 3517.21 of the Ohio Revised Code.

20.     Defendant Phillip Richter, sued in his official capacity, is the Executive Director and Staff Attorney for the Commission.  As Staff Attorney, Defendant Richter has authority to review complaints and make recommendations to the Commission.  Ohio Revised Code § 3517.154; Ohio Admin. Code 3517-1-02(A) & 3517-1-10(A).

21.     Defendant Jennifer Brunner, sued in her official capacity, is the Ohio Secretary of State.  Pursuant to Section 3501.05(N)(2) of the Ohio Revised Code, Defendant Brunner, as secretary of state, is under an explicit legal duty to:

> report a failure to comply with or a violation of a provision in sections . . . 2517.20 to 3517.22 . . . of the Revised Code, whenever the secretary of state has or should have knowledge of a failure to comply with or a violation of a provision in one of those sections, by filing a complaint with the Ohio elections commission . . .

"[S]ince [Defendant] Brunner took office in January 2007, she has filed approximately 764 complaints with the Ohio Elections Commission."  *State ex rel. LetOhioVote.Org v. Brunner*, 125 Ohio St.3d 420, 422 928 N.E.2d 1066, 1068-69, 2010-Ohio-1895 ¶ 7.

22.     All actions taken or threatened to be taken by the Defendants herein were undertaken under color of state law.

**FACTUAL AND LEGAL ALLEGATIONS**

*Congressman Driehaus and ObamaCare*

23.     In early 2010, the United States Congress passed and President Obama signed in law a piece of legislation known as the Patient Protection and Affordable Care Act.  The Act has also been given the appellation of ObamaCare.

24.     One of those who voted in favor of ObamaCare was Cincinnati-area Congressman Steve Driehaus.  His vote in favor of ObamaCare was very controversial, especially with respect to the issue of the potential for the federal funding of abortions, for ObamaCare allows for taxpayer-funded abortions.

25.     In advance of the election that was held on November 2, 2010, a 501(c)(4) organization known as the Susan B. Anthony List (hereinafter referred to as "SBA List") sought to inform the public of the public conduct of certain members of Congress who voted in favor of ObamaCare, including Congressman Driehaus.  To that end, the SBA List arranged for billboard advertisements that would be critical of Congressman Driehaus for his vote on ObamaCare.

26.     The SBA List's advertisement stated "Shame on Steve Driehaus!  Driehaus voted FOR taxpayer-funded abortion."   SBA List planned and actually did have the advertisement displayed on billboards in the Cincinnati area.  A copy of the SBA List's advertisement is attached hereto as **Exhibit A.**

27.     Thus, the proposed speech of the SBA List did not contain terms of express advocacy, *i.e.*, terms such as vote for, elect, support, cast your ballot for, vote against, defeat, or reject, but was simply a form of issue advocacy.

28.     The issue advocacy in which the SBA List sought to engage is a form of core

6

political speech.

29.     In response to the efforts of the SBA List to engage in core political speech, Congressman Driehaus, on October 4, 2010, filed a complaint with the Ohio Elections Commission against the SBA List, claiming the billboard advertisement violated Section 3517.21(B)(9) and Section R.C. 3517.21(B)(10) of the Ohio Revised Code.

30.     A copy of the complaint that Congressman Driehaus filed against the SBA List is attached hereto as **Exhibit B.**

31.     Subsequently, a panel of the Ohio Elections Commission concluded that probable cause existed that the SBA List violated the two state law provisions and referred the matter for a evidentiary hearing before the full Commission.

32.     Such a probable cause determination against the SBA List or any other party brought before the Ohio Elections Commission for allegedly violating the Statutes serves as a negative taint against the message and the speaker, all without the opportunity to a full and complete adjudication consistent with due process.

33.     The negative taint against the messages and speakers against whom the Ohio Elections Commission has found probable cause of a violation of the Statutes is further exasperated due to the fact that those filing such complaints before the Commission do so shortly before an election so as to obtain a probable cause determination but then, after the election, the complaints are withdrawn and no final adjudication ever occurs.

34.     Following the probable cause determination against the SBA List, Congressman Driehaus reportedly sought to engage in extensive discovery and inquiry into the operations and business of the SBA List.

35.     But the SBA List is not the only organization critical of Congressman Driehaus'

vote in support of ObamaCare and its allowance for the funding of abortions with taxpayer dollars. Plaintiff COAST is also critical of Congressman Driehaus.

36. In connection with its political activities for the election that was held on November 2, 2010, COAST desired to engage in core political speech through its mass e-mail communications and its on-line blog (www.COAST-USA.blogspot.com) and press releases. One such effort included the desire to disseminate an email to its supporters containing factual statements and opinions related to Congressman Driehaus and his support of ObamaCare, as well as his actions against the SBA List before the Ohio Elections Commission.

37. COAST desired to disseminate the e-mail and the information contained therein in advance of the election in order to take advantage of heightened political interest.

38. A copy of the e-mail which COAST desired to send (but did not send) is attached hereto as **Exhibit C**.

39. Thus, the proposed e-mail of COAST vis-à-vis Congressman Driehaus did not contain terms of express advocacy, *i.e.*, terms such as vote for, elect, support, cast your ballot for, vote against, defeat, or reject, but was simply a form of issue advocacy.

40. The issue advocacy in which COAST desired to engage with respect to Congressman Driehaus is a form of core political speech.

41. Part of the content of the political message that COAST desired to send is similar to that sought to be advanced by the SBA List, *i.e.*, that Congressman Driehaus' vote in favor of ObamaCare was a vote for wasting taxpayer dollars on abortions.

42. Yet, the political content of COAST's desired message goes beyond simply declaring that Congressman Driehaus voted in favor of taxpayer-funded abortion. Also in its desired political communication, COAST included criticism directed at Ohio Elections

Commission and asserted that Congressman Driehaus, "[k]nowing of the horribly partisan nature of the [Commission] and its history of trampling First Amendment freedoms with tortured interpretations of the truth and 'permissible' discourse," hopes that the Commission will "declare the clearly true statements of the Susan B. Anthony List as false, a completely laughable assertion. Using that partisan and erroneous declaration, Driehaus hopes to discredit Susan B. Anthony List and other critics just before the election."

43.     COAST concluded its desired political communication by not only repeating the declaration that Congressman Driehaus voted to fund abortion, but also that he lied about the legal effect of his vote.

44.     Congressman Driehaus already demonstrated his complete disregard for the First Amendment by invoking the power and authority of a government agency, *i.e.*, the Ohio Elections Commission, to aid him in squelching a free and critical debate about him.

45.     Fearful of finding itself subject to the same fate as the SBA List, *i.e.*, dragged before an inquisitional governmental agency who will sit in judgment of the truth of political speech and being subjected to extensive and intrusive discovery, COAST withheld its dissemination of the proposed e-mail relating to Congressman Driehaus' support of ObamaCare and its funding of abortions.

46.     Though Congressman Driehaus lost the election on November 2, 2010, there is the potential that he will he run again for Congress in 2012 (or that he already started his campaign for Congress in 2012).

47.     For on the evening of November 2, 2010, Congressman Driehaus declared: "We know how hard it was to work, we know how hard it was to get out there and do our part. We are caught up in a change, caught up in a wave, just like we were brought in on a wave. But *we*

*will be back*."

48.     Additionally, news reports indicated that the crowd of supporters of Congressman Driehaus who were with him the evening of November 2, 2010, began shouting or chanting "2012".

49.     Even a news story in *The News Record* reporting on the defeat of Congressman Driehaus contained the telling headline of "Driehaus looks to future, 2012".

50.     And Congressman Driehaus has since the election declared that he may run again for Congress.

51.     Furthermore, according to the website of the Federal Elections Commission, Congressman Driehaus still has an active campaign committee.

52.     During the 2012 election cycle, COAST desires to make the same or similar statements about other federal candidates who voted for ObamaCare, as well as about candidates in local or state elections who either voted to support or voiced support of ObamaCare.

53.     In order to be able to engage in core political speech critical of an incumbent congressman and protected by the First Amendment, but to be able to do so without being subjected to a modern inquisition by a paternalistic governmental agency, COAST seeks the protection and succour of this Court to vindicate and protects its rights under the First Amendment.

54.     COAST's speech is tempered and/or chilled because another entity, SBA List which was disseminating a message similar to that which COAST desired to make, had a complaint filed against it with the Ohio Elections Commission, resulting in subjecting the SBA List to a formal hearing before the Commission, as well as subjecting it to extensive and exhaustive discovery requirements from Congressman Driehaus.

55.     In fact, in light of the actions by Congressman Driehaus against the SBA List, *i.e.*, dragging the SBA List before the modern-day inquisition that is the Ohio Elections Commission, COAST refrained from sending the proposed e-mail.

56.     Congressman Driehaus' filing of the complaint against the SBA List with the Ohio Elections Commission and pursuant to Ohio law chilled and burdened Plaintiff COAST's speech in the crucial last weeks leading up to the November 2, 2010 general election.

57.     In addition to sending the proposed e-mail in advance of the recently conducted election, COAST desires to continue to aggressively engage in the dissemination of information on the actions, comments and political positions of Congressman Driehaus and other members of Congress, and to be able to do so without the fear or threat of being accused of violating either Section 3517.21(B)(9) or Section 3517.21(B)(10) of the Ohio Revised Code together with thus being subject to the harassment of having a complaint filed against it with the Ohio Elections Commission which would then result in subjecting COAST to an inquisition by the a state governmental agency.

### *Efforts During the Forthcoming Elections for Cincinnati City Council*

58.     In additional to the foregoing, COAST desires to continue to aggressively engage in the dissemination of information on the actions, comments and political positions of various public officials (most of whom are or will be at some time candidates for public office, at either the federal, state or local level) and to be able to do so without the fear or threat of being accused of violating either Section 3517.21(B)(9) or Section 3517.21(B)(10) of the Ohio Revised Code together with thus being subject to the harassment of having a complaint filed against it with the Ohio Elections Commission which would then result in subjecting COAST to inquisition by the

a state governmental agency.

59.     For example, in 2011, elections will be held in the City of Cincinnati for the Cincinnati City Council.

60.     One major issue in the forthcoming election for Cincinnati City Council will be the effort to introduce street cars as a mode of public transportation within the City of Cincinnati.

61.     In promoting the street cars, officials of the City of Cincinnati have asserted, as factual matter, that the annual operating costs of the street cars will be up to $3 million.

62.     However, COAST believes that the operating costs of the street cars will be approximately $9 million.

63.     Members of the Cincinnati City Council who have supported the introduction of street cars include council members Jeff Berding, Chris Bortz, Laketa Cole, Roxanne Qualls, Cecil Thomas, Laure Quinlivan and Leslie Ghiz, all or most of whom are eligible to seek re-election to Cincinnati City Council and, based upon information and belief, are expected to seek (or are already in the process of seeking) re-election to city council.

64.     Thus, during the course of the forthcoming election for Cincinnati City Council, COAST desires to publish, as a factual matter, the statement that the operating costs of the street cars will be nearly $9 million and to tie such statement to the support of the street cars by particular members of Cincinnati City Council who are or will be seeking election in 2011.

65.     Yet, in light of the clearly contrary and directly conflicting factual declaration by officials with the City of Cincinnati, COAST faces the real and imminent prospect of being brought before the inquisitional body that is the Ohio Elections Commission if it should put forth its factual contention, in campaign literature in support or opposition to candidates for city council, that the operating costs of the streetcar will be nearly $9 million, as opposed to the $3

million which official with the City of Cincinnati have put forth.

66.     In light of the prospect of finding itself dragged before an inquisitional governmental agency who will sit in judgment of the truth of political speech and being subjected to extensive and intrusive discovery, COAST has withheld and will continue to withhold, both now and during the course of the forthcoming election for Cincinnati City Council, its dissemination of an e-mail relating to the true operating costs that will be associated with the street cars in the City of Cincinnati.

67.     COAST desires to aggressively engage in the dissemination of information on the operating costs for the street cars in the City of Cincinnati and the support of such program by certain members of the Cincinnati City council, but to be able to do so without the fear or threat of being accused of violating either Section 3517.21(B)(9) or Section 3517.21(B)(10) of the Ohio Revised Code, as well as the harassment of having a complaint filed against it with the Ohio Elections Commission which would then result in subjecting COAST to an inquisition by the a state agency.

68.     Thus, should COAST publish during the course of the campaign for city council that the operating costs of the streetcar will be nearly $9 million, as opposed to the $3 million which official with the City of Cincinnati have put forth, COAST faces the prospects of being brought before the Ohio Elections Commission and, at a minimum, a probable cause determination being made against it, thus serving to negatively taint both the message and the messenger in the marketplace of ideas through a governmental dictate.

69.     Yet, in light of the existence and on-going threat of being hauled before the Ohio Elections Commission but in an effort to avoid being subjected to such a harassing and threatening process, COAST has and will continue to restrain and temper its speech so that it

13

clearly avoids even the prospect of allegedly violating either Section 3517.21(B)(9) or Section 3517.21(B)(10) of the Ohio Revised Code. But in so doing, COAST inevitably will have restrained from engaging in speech that is protected by the First Amendment.

70. Plaintiff COAST has no adequate remedy at law.

## COUNT I
### Ohio Revised Code § 3517.21(B)(9) is Facially Unconstitutional

71. COAST restates and incorporates by reference all of the allegations contained in all of the preceding paragraphs

72. Section 3517.21 (B)(9) of the Ohio Revised Code is unconstitutional because it lacks an "actual malice" requirement. *New York Times v. Sullivan,* 376 U.S. 254, 280 (1964).

73. Section 3517.21 (B)(9) is unconstitutionally vague and overly broad in the speech in which it seeks to regulate. Additionally, Section 3517.21 (B)(9) unconstitutionally relies on the intent of the speaker and implications of speech to ascertain its scope. *Briggs v. Ohio Election Commission,* 61 F.3d 487 (6th Cir. 1955).

## COUNT II
### Ohio Revised Code § 3517.21 (B)(9) is Unconstitutional

74. COAST restates and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

75. Section 3517.21 (B)(9) as applied to citizens and organizations taking positions on political issues unconstitutionally penalizes protected opinion. *Milkovich v. Lorain Jouranl Co.*, 497 U.S. 1, 20 (1990)

## COUNT III
### Ohio Revised Code § 3517.21(B)(10) is Facially Unconstitutional

76. COAST restates and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

14

77.     Section 3517.21 (B)(10) is unconstitutionally vague and overly broad in the speech in which it seeks to regulate.  Additionally, Section 3517.21 (B)(10) unconstitutionally relies on the intent of the speaker and implications of speech to ascertain its scope.  *Briggs v. Ohio Election Commission,* 61 F.3d 487 (6th Cir. 1955).

## COUNT IV
### Ohio Revised Code § 3517.21 (B)(10) is Unconstitutional

78.     COAST restates and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

79.     Section 3517.21 (B)(10) as applied to citizens and organizations taking positions on political issues unconstitutionally penalizes protected opinion.  *Milkovich v. Lorain Jouranl Co.*, 497 U.S. 1, 20 (1990).

## COUNT V
### Ohio Revised Code § 3517.21 (B)(9) Has Been Preëmpted by Federal Law

80.     COAST restates and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

81.     The Federal Elections Campaign Act (FECA), 2 U.S.C. § 431 *et seq.*, includes an explicit preëmption provision, which states that "the provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State Law with respect to election to Federal office." 2 U.S.C. § 453.

82.     Section 453 is intended "to make certain that the Federal law is construed to occupy the field with respect to elections to Federal offices and that the Federal law will be the sole authority under which such elections will be regulated."  H.R. Rep. No. 1239, 93d Cong., 2d Sess. 10 (1974).

83.     Section 3517.21 (B)(9) of the Ohio Revised Code has been preëmpted by the

FECA to the extent it is applied or attempted to be applied to regulate conduct or speech during the course of a campaign for federal office

84.     Thus, to the extent the Defendants seek or claim the right to regulate conduct and speech during the course of a campaign for election to a federal office, Section 3517.21(B)(9) of the Ohio Revised Code has been preëmpted by the FECA.

## COUNT VI
### Ohio Revised Code § 3517.21(B)(10) Has Been Preëmpted by Federal Law

85.     COAST restates and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

86.     Section 3517.21 (B)(10) of the Ohio Revised Code has been preëmpted by FECA to the extent it is applied or attempted to be applied to regulate conduct or speech during the course of a campaign for federal office

87.     Thus, to the extent the Defendants seek or claim the right to regulate conduct and speech during the course of a campaign for election to a federal office, Section 3517.21(B)(10) of the Ohio Revised Code has been preëmpted by FECA.

## COUNT VII
### Ohio Revised Code § 3517.20 Has Been Preëmpted by Federal Law

88.     COAST restates and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

89.     Section 3517.20 of the Ohio Revised Code has been preëmpted by FECA to the extent it is applied or attempted to be applied to regulate conduct or speech during the course of a campaign for federal office.

90.     Notwithstanding the fact that the Federal Election Commission has declared the

disclaimer requirements of Ohio law have been preëmpted by FECA to the extent such requirements are attempted to be applied to campaigns for federal office, the Ohio Elections Commission has exercised and has continued to exercise jurisdiction over complaints alleging violation of the disclaimer requirement even in cases involving federal elections.

91.     In fact, with respect to the complaint filed against the SBA List by Driehaus which included an alleged violation of the disclaimer requirement of Section 3517.20 of the Ohio Revised Code, the Ohio Elections Commission proceeded to exercise jurisdiction over that allegation and, thus, subjected the SBA List to the hassle of having to defend such an allegation.

92.     COAST desires to advocate fully and freely with respect to federal officeholders and federal election without subjecting itself to the forced speech provisions of Ohio's disclaimer requirements.  But, in light of the Ohio Election Commission's failure to recognize the preemptive effect of FECA with respect to the disclaimer requirements, COAST must either engage in speech the content of which is mandated by the government or engage in speech which would be violative of Section 3517.20 of the Ohio Revised Code and face the prospect of finding itself subject to the same fate as the SBA List, *i.e.*, dragged before an inquisitional governmental agency who purports to have jurisdiction over a state law provision which has been preëmpted by federal law.

93.     Thus, to the extent the Defendants seek or claim the right to regulate conduct and speech during the course of a campaign for election to a federal office, Section 3517.20 of the Ohio Revised Code has been preëmpted by the FECA.

**COUNT VIII**
**The Processes and Procedures of the Ohio Elections Commission Result in
a Violation of Substantive and Procedural Due Process Rights**

94.     COAST restates and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

95.     From the moment of the initial complaint being filed with the Ohio Elections Commission, any person simply accused of violation either Section 3517.21 (B)(9) or Section 3517.21 (B)(10) of the Ohio Revised Code are subject to an arbitrary and capricious procedure and process sufficient to constitute a denial of substantive and procedural due process.  Such procedures and process allow for broad and unlimited intrusion into the associational rights of political organizations, as well as the inherent harassment attendant with defending one's speech.

96.     For example, the Defendants will and have conducted probable cause hearings on complaints alleging violations of the Ohio elections law, including Section 3517.21 (B)(9) or Section 3517.21 (B)(10) of the Ohio Revised Code, yet have failed to provide timely notice of such hearing or the opportunity to be heard at the hearing.

97.     Additionally, most of the members of the Ohio Elections Commission lack any legal experience or training.  Yet, these governmental bureaucrats are empowered to find violations of the law by determining complex legal issues, including core First Amendment issues, and they are also empowered to impose sanctions and fines.

98.     The deficiency in the legal training and background of the members of the Ohio Elections Commissions has a direct impact on the constitutional rights of those appearing before it, including a complete misapprehension of the legal concepts of actual malice, clear and convincing evidence, and the objective standard for assessment of First Amendment cases.

99.     In light of the foregoing constitutional infirmities with respect to the process and

100.     In order to avoid such an arbitrary and capricious process and procedure utilized by the Ohio Elections Commission, COAST (as well as others) has and will necessarily temper the exercise of their free speech less their constitutional rights be trivialized by the process and procedures of the Commission.

## PRAYER FOR RELIEF

**Wherefore,** Plaintiff COAST requests the following relief:

- declare Sections 3517.21(B)(9) and 3517.21(B)(10) of the Ohio Revised Code facially unconstitutional;

- declare Sections 3517.21(B)(9) and 3517.21(B)(10) of the Ohio Revised Code unconstitutional as applied to citizens and organizations taking positions on political issues;

- declare Sections 3517.21(B)(9) and 3517.21(B)(10) of the Ohio Revised Code being preempted by the Federal Elections Campaign Act (FECA), 2 U.S.C. § 431 *et seq*., as it relates to the conduct and speech in campaigns for election to federal office;

- enjoin the Ohio Secretary of State from investigating or making any referrals to the Ohio Elections Commission for alleged violations of Sections 3517.21(B)(9) and 3517.21(B)(10) of the Ohio Revised Code;

- enjoin the Ohio Elections Commission from enforcing Sections 3517.21(B)(9) and 3517.21(B)(10) of the Ohio Revised Code against COAST and others similarly situated;

- declare Sections 3517.20 of the Ohio Revised Code being preempted by the Federal Elections Campaign Act (FECA), 2 U.S.C. § 431 *et seq*., as it relates to the conduct and speech in campaigns for election to federal office;

- enjoin the Ohio Elections Commission from enforcing Sections 3517.20 of the Ohio Revised Code against COAST and others similarly situated as it relates to the conduct and speech in campaigns for election to federal office;

- enjoin the Ohio Secretary of State from investigating or making any referrals to the Ohio Elections Commission for alleged violations of Sections 3517.20 of the Ohio Revised Code as it relates to the conduct and speech in campaigns for election to federal office;

- enjoin the Ohio Elections Commission from enforcing Sections 3517.20 of the Ohio Revised Code against COAST and others similarly situated as it relates to the conduct and speech in campaigns for election to federal office;

- grant such remedial relief as the Court deems appropriate in order to remedy or rectify the arbitrary and capricious procedures and processes of the Ohio Elections Commission which result in a denial of substantive and procedural due process;

- grant Plaintiff COAST its costs and attorneys fees under 42 U.S.C. 1988 and any other applicable authority; and

- grant any and all other such relief this Court deems may be just and equitable.

Respectfully submitted,

_/s/ Curt C. Hartman_____
Curt C. Hartman (0064242)
THE LAW FIRM OF CURT C. HARTMAN
3749 Fox Point Court
Amelia, Ohio 45102
Telephone:  (513) 752-8800
Email:  hartmanlawfirm@fuse.net

Christopher P. Finney (0038998)
FINNEY, STAGNARO, SABA & PATTERSON CO., LPA
2623 Erie Avenue
Cincinnati, Ohio 45208
Telephone:  (513) 533-2980
Facsimile:   (513) 533-2990
Email: cfinney@fssp-law.com

*Attorneys for Plaintiff Coalition
Opposed to Additional Spending & Taxes*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing will be served via the Court's electronic filing system upon all counsel of record.

_/s/ Curt C. Hartman_____