UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SUSAN B. ANTHONY LIST, *et al.*,  :  Consolidated Case No. 1:10-cv-720

    Plaintiffs,  :  Judge Timothy S. Black

vs.  :

REP. STEVE DRIEHAUS, *et al.*,  :

    Defendants.  :

ORDER GRANTING SUSAN B. ANTHONY LIST'S
RENEWED MOTION FOR SUMMARY JUDGMENT (Doc. 89)

Sometimes even a person with excellent vision does not see the forest for the trees.

On August 1, 2011, this Court entered its interlocutory Order Denying Plaintiff Susan B. Anthony List's Motion for Summary Judgment on Defamation. (Doc. 34). The Court held that former Congressman Steve Driehaus had stated a plausible claim for defamation, sufficient to proceed to discovery.

About a year later, on June 28, 2012, the United States Supreme Court ruled in *United States v. Alvarez*, 132 S. Ct. 2537 (2012), that a liar who falsely claimed having won the Medal of Honor could not be punished criminally for his false statements given the protection of free speech under the First Amendment. This decision of the Supreme Court followed on the heels of *Snyder v. Phelps*, 131 S. Ct. 1207 (2011), where the Court held that a father failed to state a claim for tort against picketers who hatefully protested at the funeral of his son, a fallen veteran, because of the protestors' right to free speech.

Three months later, this Court stopped all further proceedings in this case until the Court could rule upon SBA List's Renewed Motion for Summary Judgment on defamation. Earlier in the summer, SBA List had retained new trial counsel who had promptly filed the renewed motion, alleging "new and refined arguments," including a claim that associating a political candidate with a mainstream political position, even if false, cannot constitute defamation, as a matter of law. Upon review, and in light of established and recent decisions of the United States Supreme Court, this Court agrees.

As the United States Supreme Court stated in *Snyder v. Phelps*:

"Speech on matters of public concern... is at the heart of the First Amendment's protection. The First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open. That is because speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." 131 S. Ct. at 1215 (citations omitted).

And as the United States Supreme Court stated recently in *United States v. Alvarez:*

"<u>The remedy for speech that is false is speech that is true</u>. This is the ordinary course in a free society. <u>The response</u> to the unreasoned is the rational; to the uninformed, the enlightened; <u>to the straightout lie, the simple truth</u>. The theory of our Constitution is that the best test of truth is the power of the thought to get itself accepted in the competition of the market." 132 S. Ct. at 2550 (citations omitted) (emphasis supplied).

The concomitant principles of free speech and truth collide most violently in the arena of political speech. During the recently passed national elections, citizens were bombarded with political advertisements that the targets of which daily denounced as lies. Who then shall be the arbiter of political truth? Ultimately, in a free society, the truth of political back and forth must be adjudicated in the "marketplace of ideas," *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 341 (1995), in the context of the "uninhibited, robust, and wide-open" debate on "public issues" that the First Amendment protects. *New York Times v. Sullivan*, 376 U.S. 254, 2702 (1964)). It is this fundamental principle of a free society that led the United States Supreme Court to state:

> Cases which impose liability for erroneous reports of the political conduct of officials reflect the obsolete doctrine that the governed must not criticize their governors. ... The interest of the public here outweighs the interest of appellant or any other individual. The protection of the public requires not merely discussion, but information. Political conduct and views which some respectable people approve, and others condemn, are constantly imputed to Congressmen. Errors of fact, particularly in regard to a man's mental states and processes, are inevitable. ... Whatever is added to the field of libel is taken from the field of free debate.

*Sweeney v. Patterson*, 128 F.2d 457, 458 (1942) (quoted favorably by the Supreme Court in *New York Times v. Sullivan*, 376 U.S. at 272 (1964)).

List now argues that associating a political candidate with a mainstream political position, even if false, cannot constitute defamation, as a matter of law. List supports its assertion with citation to more than a dozen cases and asserts that "Driehaus cannot find a single case, in all of American history, that has awarded defamation damages based on a false statement about a public official's position on public policy."

-3-

In *Shields v. Booles*, 38 S.W.2d 677, 682 (Ky. 1931), the Court of Appeals of Kentucky (its supreme court) rejected a defamation lawsuit based on the <u>false claim</u> that a candidate voted for "race-track gambling" because this "was a question upon which men of character held opposite opinion, and to say that representative voted either way was not libel of him, even though the statement was not true."

*In Manasco v. Walley*, 63 So.2d 91, 95 (Miss. 1953), the Supreme Court of Mississippi held non-defamatory a <u>false claim</u> that legislator had taken certain official legislative action, because it "was a matter about which there might be reasonable differences of opinion" and so neither choice would "reflec[t] upon [the plaintiff's] honesty, integrity, or moral character."

In *Hein v. Lacy*, 228 Kan. 249, 259-60 (1980), the Supreme Court of Kansas held that a brochure attacking a legislator's "voting record and views" was not actionable because it was not "an attack on [his] personal integrity or character," but only on "his views and voting record in areas where there is wide public controversy and difference of opinion," including as to bills with respect to which "knowledgeable and respectable persons appeared on both sides."

*In Cox v. Hatch*, 761 P.2d 556, 562 (Utah 1988), the Supreme Court of Utah held that the <u>false</u> attribution of support for the Republican Party and for Senator Hatch's reelection was not defamatory, because support for a "mainstream party" is "not at odds with the fundamental social order."

In *Frinzi v. Hanson*, 140 N.W.2d 259, 262 (Wis. 1966), the Supreme Court of Wisconsin held that a statement charging a Democratic candidate in a Democratic Primary with being "not a good Democrat" and having of having "thrown away all pretense at being a Democrat" was not defamatory.

In *Pritchard v. Herald Co.,* 120 A.D.2d 956, 956 (N.Y. App. Div. 1986), a New York appellate court held that it was not defamatory to describe someone as a "controversial" "black activist," because "the current of contemporary public opinion" does not expose the person to public hatred or contempt.

Moreover, as to Ohio law, in *Sweeney v. Beacon Journal Publishing Co.,* 66 Ohio App. 475, 479 (1941), an Ohio appellate court held that a publication dealing "entirely with the activities of a public officer in his connection with a matter entirely political in character" cannot be libelous.

Each of these cases reflects the truth that courts have "consistently refused to recognize ... any test of truth ... by judges [or] juries" as to public debate. *State v 119 Vote No! Comm.,* 957 P.2d 691, 695 (Wash. 1998) (quoting *New York Times*, 376 U.S. at 271).

The law steers far clear of requiring judicial determination of political "truth," and does so because of the serious dangers to democracy and the political process that would result from turning the courts into "truth squads" with respect to core political speech on matters of public concern. *See Alvarez*, 132 S. Ct. at 2457-48 (plurality); *id.* at 2552, 2556 (Breyer, J., concurring); *id.* at 2564 (Alito, J., dissenting).

Notwithstanding all of this, the Court's prior analysis is sound to a degree; when one walks through the elements of a claim for defamation, the required allegations are present here. However, that precise and robotic analysis of each of the factors required for defamation caused the Court to focus only on the trees and ultimately not to see the forest. Here, the forest is the right to free speech under the First Amendment, even false speech, when it applies to politics.

Given that, as a matter of law, associating a political candidate with a mainstream political position, even if false, cannot constitute defamation, the Court hereby grants summary judgment to Susan B. Anthony List and dismisses Driehaus's counterclaim for defamation as to the taxpayer funded statements.[1]

---

[1] As to the ordered statement, the Court also grants summary judgment to Susan B. Anthony List and dismisses Driehaus's counterclaim for defamation because the statement is capable of an innocent construction and/or substantially true.

A statement is not "false" so long as it is true under *any* reasonable construction. In Ohio, this is known as the innocent construction doctrine. *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St. 3d 369, 372 (1983); *see also England v Auto. Canteen Co.,* 349 F.2d. 989, 991 (6th Cir. 1965). An action for defamation does not lie against a statement that is, in fact, false unless plaintiff proves that the statement is not even "substantially true." *Nat'l Medic Servs. Corp. v. E.W. Scripps Co.,* 61 Ohio App.3d 752, 755 (1989). Here, Driehaus's counsel told Lamar that if Lamar put up the billboards, Driehaus would sue. Therefore, whatever reputational harm Driehaus might have suffered from the claim that he "ordered" Lamar not to erect the billboards was no greater than the harm he would have suffered from publication of the truth that he threatened to sue Lamar if it erected the billboard. Here, the falsity burden is not satisfied because "the gist" of the statement is justified. *Masson,* 501 U.S. at 516-18; *see also Bustos v. A&E Television Networks,* 646 F 3d. 762, 764 (10th Cir. 2011) (a statement is not actionable unless it is "material," in terms of "the damage it has done to the plaintiff's reputation" relative to "the damage the truth could have caused."); *Texas Monthly, Inc. v. Transamerican Natural Gas Corp.,* 7 S.W.3d 801, 812-13 (Tex. Ct. App. 1999) (statement was thus not "more damaging" than the truth, and "the gist" of the statement - "although not 100% accurate in every detail" - was "substantially true and not actionable.").

The Clerk shall enter judgment accordingly, causing this decision to become a final, appealable order. And this case shall be closed in this Court.

**IT IS SO ORDERED.**

Date: January 25, 2013               *s/ Timothy S. Black*
                                     Timothy S. Black
                                     United States District Judge